Maeva O. MERSMAN, Plaintiff,

v.

William A. HALTER, Acting
Commissioner of Social
Security, Defendant.

No. 00–2414 SC.

United States District Court,
N.D. California.

April 2, 2001.

William Galvin, Walnut Creek, CA.

Alex Tse, Asst. U.S. Atty., San Francisco, CA.

*ORDER GRANTING PLAINTIFF'S MOTION FOR REMAND; DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT*

CONTI, District Judge.

## I. INTRODUCTION

Plaintiff Maeva Mersman brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final determination that Plaintiff does not qualify for disability benefits under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq.,* by Defendant William Halter, Acting Commissioner of the Social Security Administration.[1] In the present motion, Plaintiff seeks an order reversing the Commissioner's final findings, or in the alternative, remanding the case to the Commissioner for further proceedings. The Commissioner, in turn, has filed a cross-motion for summary judgment.

## II. BACKGROUND

On May 27, 1997, Plaintiff filed an application for Social Security disability insurance. (R. at 46–47.) Plaintiff's disability insured status expired on March 31, 1998. (R. at 15.) The Social Security Administration denied Plaintiff's application upon initial review and on reconsideration. (R. at 30–40.) Plaintiff then requested a rehearing which took place before the Honorable Donald F. Rector, Administrative Law Judge ("ALJ") on November 5, 1998. (R. at 43, 320–79.) Present counsel represented Plaintiff.

Plaintiff's medical records indicate that Plaintiff suffered an eclamptic seizure with loss of consciousness late in pregnancy on September 8, 1993. (R. at 130–168.) Around the same time, Plaintiff was diagnosed with deep-vein thrombosis. (R. at 130–168.) Between 1993 and the present, Plaintiff had a number of medical problems unrelated to plaintiff's eclampsia and deep-vein thrombosis.[2] (R. at 169–294.)

On February 24, 1997, Plaintiff complained of increasing memory problems to Dr. Ferry, her OB/GYN. (R. at 169.) Dr. Ferry recommended a neurological examination which took place on April 11, 1997. (R. at 169, 308.) The neurological report did not test Plaintiff's mental status in detail, but noted that it "seems to be grossly normal with many digressions" and that "it was difficult [for Plaintiff] to hold the train of her thought." (R. at 308.) The report's impression was of a history of cognitive decline, status post seizure, perhaps a hemorrhage or ischemic event from the 1993 seizure, and depression. (R. at 308.)

On July 26, 1997, Dr. Packer conducted a physical examination. Dr. Packer reported that Plaintiff had monotone and regulated speech, had a negative Romberg sign, had "fairly good, but not completely intact or normal" finger movements, could do serial nines, was able to spell the word "world" backwards slowly, and became anxious when pressed. Dr. Packer opined that Plaintiff's ability to work may be of a psychiatric nature or neurological nature

---

1. Pursuant to Fed.R.Civ.P. 25(d)(1), Acting Commissioner William A. Halter is substituted for former Commissioner Kenneth S. Apfel as the Defendant in this suit.

2. These included right facial cellulitis and a dental abscess in October 1993; kidney stone pain in March 1994; a lithotripsy for kidney stones in June 1994, December 1994, March 1, 1995; a common bile duct stone in October 1995; and a diagnosis for symptomatic cholelithiasis in November 1995. (R. 130–294.)

and that her history of legs clots and emboli precluded full time work or sitting in one position. (R. at 298–99.)

A consultative psychiatric examination was also conducted on July 26, 1997. Dr. Bandlow reported: "Claimant recalled a detailed mental history and engaged in a logical conversation. Claimant's attention space was good. Remote and short-term memory were intact." (R. at 296.) Dr. Bandlow opined that Plaintiff presents a generalized anxiety disorder following eclampsia of pregnancy, is not motivated to work, exaggerates her symptoms, and that there is no evidence of an organic mental disorder, major depressive disorder, or psychotic disorder. (R. at 295–299.)

Subsequently during September and October of 1997, Plaintiff underwent extensive neuropsychological testing administered by Dr. Kosters and a Psychology intern, Andrea Bauer. Dr. Kosters' evaluation report stated:

> Testing revealed that Ms. Mersman's verbal IQ scores were within the average range while her performance IQ scores were in the low average range. Taken together, these place her overall cognitive functioning in the average range. However, it should be noted that to describe her performance as average is misleading insofar as it conceals the marked variability of her cognitive skills.

(R. at 303.) According to Dr. Kosters, while Plaintiff was in the 98th percentile in vocabulary skills, she was in the 2nd percentile in visual-motor and coordination skills. (R. at 303.) Dr. Kosters opined that:

> Memory is [Plaintiff's] most significant area of impairment. She is having difficulties with all forms of memory. Her lowest scores, placing her in the 1[st] percentile when compared with others in her age group, occurred on the at-

tention/concentration and delayed recall indices. Difficulty was experienced in organizing and accessing learned information in tactile, visual and verbal modalities. (R. at 303.)

In addition, Dr. Kosters found that a "severe impairment appeared on tasks that required the integration of multiple skills, such as attention, memory, sequencing and speed." (R. at 303.)

At the administrative hearing, Plaintiff testified that she no longer takes public transportation (R. at 332.);[3] she cooks, but often with the help of her husband or a friend (R. at 338); she cleans the house with the use of written reminders to help her stay on track; she shops with her husband (R. at 333, 338); she can read a newspaper for ten minutes at a time (R. at 334–35); and that she helps out at her son's school between 9:45 and 1:15 every day (R. at 336.) Plaintiff testified that this school volunteering involves following instructions from the school teacher to "put together books or color or staple" and that 30–45 minutes are spent taking a break. (R. at 336.) Plaintiff also testified that she generally naps one to three hours in the afternoon and then works at making dinner. (R. at 337–38.)

Plaintiff's husband, Bruce Anderson, also testified at the administrative hearing that Plaintiff requires notes to remember simple daily tasks such as get the dishes done, do the laundry, or clean the kitchen. Mr. Anderson testified that the list is limited to a few things because a full day's work would be too much for Plaintiff. (R. at 353–54.) Mr. Anderson testified that he transferred to a night shift in order to help Plaintiff with daily tasks, getting to doctor appointments, and caring for their young son. (R. at 350–52, 354.) Plaintiff's friend, Cassandra Wright, testified that Plaintiff requires notes to handle daily

---

**3.** Even prior to 1993, Plaintiff did not drive. (R. at 335.)

events, such as how to cook or how to handle cuts.[4] (R. at 359.)

Finally, a vocation expert, Richard Hincks, testified at the administrative hearing. (R. at 361–78.) The ALJ inquired about the type of work, if any, a person with Plaintiff's education and background and who was limited to work at a sedentary or light exertion level involving only one-two step tasks with the use of visual reminders and limited public contact would be able to perform. (R. at 365–73.) The vocation expert testified that, while Plaintiff could not return to her past work, she could perform the jobs of a labeler, an agricultural sorter, a hand packer, or a production assembler.[5] During questioning by Plaintiff's attorney, Mr. Hincks testified that if a person could only work from the visual reminders for 30–45 minutes, then the base of possible jobs as well as the ability to work at all would be eroded. (R. at 373–74.) The vocational expert also testified that all the identified positions were full-time positions and if a person could not work for more than four hours without a significant rest, then the person would not be able to work those positions. (R. at 374.)

On January 29, 1999, the ALJ issued a Hearing Decision finding Plaintiff was not entitled to disability benefits. (R. at 12–24.) After reviewing Plaintiff's medical history, the ALJ concluded that "the evidence establishes that the claimant's impairments do not meet the severity criteria contained in the Listing of Impairments." (R. at 21.) The ALJ based this finding on the fact that no treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impair-

ment. (R. at 21.) The ALJ also found Plaintiff retains the residual functional capacity to perform light work that is limited to one-two step tasks with the use of written reminders and that has limited public contact. Finally, the ALJ found that such jobs exists in the national economy in significant numbers. (R. at 22.)

Plaintiff filed a request for review on March 9, 1999. (R. at 6–11.) On May 8, 2000, the Appeals Council upheld the decision of the ALJ. (R. at 4–5.) Plaintiff then filed the present complaint in federal court on July 7, 2000 and now moves for summary judgment or, in the alternative, for remand. Plaintiff contends that the ALJ erred in finding Plaintiff's impairments did not meet the severity requirements set out in the Social Security Regulations and in assessing her residual functional capacity. Specifically, Plaintiff contends that the ALJ improperly rejected the opinion of Psychologist Dr. Kosters, the opinion of Dr. Packer, and the testimony of Plaintiff and lay witnesses. Plaintiff also contends the ALJ failed to use or append a Psychiatric Review Technique form as was required by 20 C.F.R. § 404.1520a(d)(2) (1999). Defendant, in turn, seeks summary judgment affirming the ALJ's ruling.

## III. *LEGAL STANDARD*

In order to collect supplemental social security income from the government, Plaintiff must establish that she suffered from a "disability." 42 U.S.C. § 423(a)(1)(D). To be considered disabled, Plaintiff must suffer from "a medically determinable physical or mental impairment ... which has lasted or can be expected to

---

**4.** The record also contains a letter from Ms. Wright to the Social Security Administration, dated June 23, 1997, stating that "[Plaintiff] has had difficulty performing daily tasks like cooking, paying bills, and organizing the house. Tasks she used to do easily [sic]....

She had memory problems.... She was easily distracted and frustrated." (R. at 86.)

**5.** The labeler job is classified as sedentary, while the agricultural sorter, hand packer, and production assembler jobs are classified as requiring light exertion.

last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be of "such severity that [Plaintiff] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

■■■ Plaintiff has the burden of showing that she is disabled. 42 U.S.C. § 423(d)(5); *Hoffman v. Heckler*, 785 F.2d 1423, 1424 (9th Cir.1986). Plaintiff meets this initial burden by showing that she cannot perform her previous occupation. *Sanchez v. Secretary of Health and Human Services*, 812 F.2d 509, 511 (9th Cir. 1987). If a claimant shows she cannot perform her previous occupation, the burden shifts to the Commissioner to show that she can still perform substantial, gainful work. *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir.1989). In meeting this burden, the Commissioner must take into consideration the requirements of specified jobs as well as a claimant's age, education, and background. *Kornock v. Harris*, 648 F.2d 525, 526–27 (9th Cir.1980) (citing 42 U.S.C. § 423(d)(2)(A)); *Johnson v. Harris*, 625 F.2d 311, 312 (9th Cir.1980).

■■■ A district court should affirm an ALJ's decision if it is supported by substantial evidence and based on the application of correct legal standards. *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citing *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir.1995)). The Court's review is directed to the record as a whole and not merely to the evidence tending to support a finding. *Cox v. Califano*, 587 F.2d 988, 990 (9th Cir.1978).

## IV. *THE ALJ'S FINDINGS*

Social Security Regulations set forth the following five step sequential process for making disability determinations:

(1) Is the claimant (here, Plaintiff) working, and if so, is the work performed "substantial gainful activity"? 20 C.F.R. 404.1520(b).

(2) Does the claimant have a "severe" impairment or combination of impairments? 20 C.F.R. 404.1520(c).

(3) Do any of the impairments or combination of impairments meet or equal in severity any impairment listed in Appendix 1 to Subpart P. of the Social Security Regulations No. 4 ("Appendix 1")? 20 C.F.R. 404.1520(d).

(4) Is claimant capable of performing her past relevant work? 20 C.F.R. 404.1520(e).

(5) Can claimant perform other jobs present in significant numbers in the national economy? 20 C.F.R. 404.1520(f).

If the answer to one of the above questions establishes that the claimant is not disabled, no further evaluation is required. 20 C.F.R. 404.1520(a).

Following the five step sequential process, the ALJ made the following findings:

(1) Plaintiff met the disability insured status requirements on September 8, 1993 and has not engaged in substantial work activity since then. (Hearing Decision, p. 9, Finding # 1 & 2, Nov. 5, 1998; R. at 23.) Plaintiff's insured status expired on March 31, 1998. (Hearing Decision, p. 9, Finding # 1, Nov. 5, 1998; R. at 23.)

(2) Plaintiff has severe impairments resulting from an eclamptic seizure in 1993 and deep-vein thrombosis in the bilateral lower extremities. (Hearing Decision, p. 9, Finding # 3, Nov. 5, 1998; R. at 23.)

(3) Plaintiff's impairments do not meet or equal the severity criteria for any impairment set forth in the Listing of Impairments found in Appendix 1. (Hearing Decision, p. 9, Finding #3, Nov. 5, 1998; R. at 23.)

(4) Plaintiff is not capable of performing past relevant work as a bank service representative. (Hearing Decision, p. 9, Findings #6 & 7, Nov. 5, 1998, R. at 23.)

(5) Plaintiff has a residual functional capacity to perform light work activity with limitations to simple one-two step tasks and written reminders. (Hearing Decision, p. 9, Finding #5, Nov. 5, 1998, R. at 23.) Jobs compatible with Plaintiff's residual functional capacity exists in significant numbers in the national economy. (Hearing Decision, p. 10, Finding #8, Nov. 5, 1998; R. at 24.)

The ALJ also found that Plaintiff's "statements concerning her impairments and their impact on her ability to work are not supported by the evidence in light of the medical history and the reports of the treating and examining practitioners." (Hearing Decision, p. 9, Finding #4, Nov. 5., 1998; R. at 23.) Having determined Plaintiff has a residual functional capacity sufficient to find work, the ALJ concluded that Plaintiff is not disabled. (Hearing Decision, p. 10, Finding #9, Nov. 11, 1998; R. at 24.)

## V. DISCUSSION

Plaintiff alleges that the ALJ's determination that she is not disabled is incorrect for the following reasons: (1) the ALJ erred in finding Plaintiff's impairments did not meet or equal the severity requirements as set forth in Appendix 1; and (2) the ALJ's findings on Residual Function Capacity are not supported by substantial evidence. Specifically, Plaintiff contends that the ALJ improperly rejected (a) the opinion of Psychologist Dr. Kosters; (b) Dr. Packer's opinion; and (c) the testimony of lay witnesses. Plaintiff's third grounds for remand is that the ALJ failed to use or append a Psychiatric Review Technique form as was required by 20 C.F.R. 1520a(d)(2) (1999).

The ALJ found Plaintiff's eclampsia and deep-vein thrombosis to be impairments which although "severe" do not meet or equal the criteria of any impairment in Appendix 1. Plaintiff contends that her memory impairment meets or equals the criteria for an organic mental disorder under § 12.02 of Appendix 1. To meet the severity criteria for an organic mental disorder, Plaintiff must satisfy Section 12.02's diagnostic requirements (Part A) and functional restrictions (Part B). Plaintiff contends that she demonstrated Part A's "loss of specific cognitive abilities or affective changes" and "medically documented persistence of ... [a] memory impairment."[6] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.A. In support, Plaintiff relies on the opinion of psychologist Dr. Kosters who examined Plaintiff several times in September and October of 1997 and found that Plaintiff's attention/concentration and delayed recall skills were in the bottom percentile, that Plaintiff experienced difficulty in organizing and accessing learned information, and Plaintiff had a severe impairment in integrating multiple skills.

The ALJ accurately summarized Dr. Kosters' report in the Hearing Decision, but concluded that "the evidence establishes that the claimant's impairments do not meet the severity criteria of any impairment contained in [Appendix 1.]" (R. at 20–21.) The opinion of an examining

---

**6.** A memory impair includes an impairment in "either short-term (inability to learn new information), intermediate, or long-term (inability to remember information that was known sometime in the past)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.02.A.

physician, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Lester v. Chater,* 81 F.3d 821, 830–31 (9th Cir.1995) (relying on *Andrews v. Shalala,* 53 F.3d 1035, 1043 (9th Cir.1995)). The ALJ did not explain how Dr. Kosters' opinion fails to demonstrate the loss of specific cognitive abilities and the existence of a memory impairment. Equally problematic, the ALJ did not give any rationale for rejecting or discounting Dr. Kosters' opinion or identify contradictory or inconsistent evidence. The ALJ's failure to give specific reasons for rejecting Dr. Kosters' testimony is an error of law that prevents this Court from determining if the ALJ's conclusion is supported by substantial evidence.

Plaintiff must still satisfy at least two Part B criteria to prevail. Plaintiff contends that she meets the severity requirements of Part B by showing a "marked restriction of activities in daily living" and "deficiencies of concentration, persistence or pace." Appendix 1, § 12.02.B.1 & B.3. In support, Plaintiff relies on the opinions of Dr. Kosters. As already discussed, the ALJ failed to state the specific and legitimate reasons why he rejected Dr. Kosters' conclusion that Plaintiff's current functioning and neuropsychological tests results make it "unlikely that Plaintiff could return to work at this time." (R. at 304.)

■ Plaintiff also relies on the opinion of Dr. Packer who indicated that Plaintiff had some neurological digressions and concluded that "full-time work or sitting in one position ... would be contraindicated for several reasons, including [Plaintiff's] history or blood clots and emboli." (R. at 299.) When a claimant has more than one impairment, the ALJ should consider the combined effect of such impairments in determining whether the Part B's functional criteria are met or equaled. *Lester,*

81 F.3d at 829. Again, the ALJ failed to set forth specific reasons why he rejected Dr. Packer's conclusions or why the combination of Plaintiff's memory problems and deep-vein thrombosis does not meet Part B's functional requirements. Without the specific reasons, this Court can not determine if the ALJ's conclusion is supported by substantial evidence.

■ In addition, Plaintiff relies on the lay testimony to show "marked restriction of activities in daily living" and "deficiencies of concentration, persistence or pace." Plaintiff testified at the administrative hearing that she no longer takes public transportation; she generally does household chores such as cooking and shopping with her husband; she depends on lists and memory devices to organize simple day activities; and she can only read about ten minutes at a time (R. at 332–34.) The ALJ rejected Plaintiff's testimony on the grounds that it was "not supported by the evidence in light of the medical history and the reports of the treating and examining practitioners." Although inconsistent with Dr. Bandlow's opinion, Plaintiff's testimony is, in many respects, consistent with the opinions of Dr. Kosters and of Dr. Packer. Furthermore, once the claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject a claimant's subjective complaints based solely on a lack of fully collaborative objective medical evidence. *See Bunnell v. Sullivan,* 947 F.2d 341, 343–46 (9th Cir.1991) (evaluating subjective pain complaints), *Byrnes v. Shalala,* 60 F.3d 639, 641–42 (9th Cir.1995) (applying *Bunnell* to subjective physical complaints); *see also, Goodenow–Boatsman v. Apfel,* 2001 WL 253200, *3 (N.D.Cal. Feb. 27, 2001) ("The same rule applies to other types of subjective symptoms besides pain."). Moreover, "although an adjudicator may find the claim-

ant's allegations of severity to be not credible, the adjudicator must specifically make findings which support this conclusion." *Bunnell,* 947 at 345, *Byrnes,* 60 at 642, *Goodenow–Boatsman,* 2001 WL 253200, *3. Thus, when an ALJ rejects the claimant's testimony about the severity of the symptoms, the ALJ must offer "specific, clear, and convincing reasons for doing so." *Light v. Social Security Administration,* 119 F.3d 789, 792 (9th Cir.1997) (citing *Smolen v. Chater,* 80 F.3d 1273, 1281 (9th Cir.1996)). General finding are not sufficient; the ALJ must state which "testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala,* 12 F.3d 915, 917 (9th Cir.1993). In weighing a claimant's credibility, the ALJ may consider the claimant's reputation for truthfulness, inconsistencies either in the claimant's testimony or between the claimant's testimony and the claimant's conduct, daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms. *Light,* 119 F.3d at 792; *see also,* 20 C.F.R. § 404.1529(c). The inconsistencies the ALJ pointed to were Plaintiff's volunteer work at her son's preschool each day, Plaintiff's ability to cook, clean and shop, and the lack of medical treatment. The ALJ, however, did not address the limited nature of Plaintiff's "work" at the preschool, the assistance Plaintiff requires to cook, clean, and shop, or Plaintiff's explanation for why she didn't receive treatment. Moreover, the hearing decision ignores the corroborating testimony of Plaintiff's husband and friend regarding the severity of Plaintiff's impairments. The lack of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it impossible for this Court to determine whether the ALJ's conclusion is supported by substantial evidence.

Plaintiff's second ground for reversal is that the ALJ erred in determining Plaintiff's residual functional capacity. The ALJ relied on the medical history, physician reports, lay witness testimony, and Mr. Hincks' expert testimony to determine Plaintiff was capable of light non-public work limited to one-two step tasks with the use of written cues. However, as in step three, *Bunnell* and *Light* impose a duty on the ALJ to set out specific reasons for rejecting an examining physician's opinion or the testimony of claimant in the step five analysis. As a result, the omissions discussed *supra* require remand of the ALJ's residual functional capacity determination as well. This is especially so since Defendant bears the burden of proof in step five.

■ Finally, Plaintiff argues that the ALJ's failure to append a Psychiatric Review Technique Form ("PRTF") to the hearing decision mandates remand. In January 1999 when the ALJ made his final decision, Social Security Regulations required the ALJ to complete a Psychiatric Review Technique Form ("PRTF") and append it to the Hearing Decision. 20 C.F.R. § 404.150a(d)(2) (1999). Failure to include the PRTF required a reviewing district court to remand. *Gutierrez v. Apfel,* 199 F.3d 1048, 1051 (9th Cir.2000); *see also, Montgomery v. Shalala,* 30 F.3d 98, 100 (8th Cir.1994); *Stambaugh v. Sullivan,* 929 F.2d 292, 296 (7th Cir., 1991); *Hill v. Sullivan,* 924 F.2d 972, 975 (10th Cir.1991) (*per curiam*). On September 20, 2000, new rules went into effect eliminating the appendage requirement, but requiring the ALJ's written decision to make a specific finding as to the degree of limitations in each functional area described in § 404.1520a(c). *See* 20 C.F.R. § 404.1520a(e)(2). Defendant does not contest that the ALJ did not attach the PRTF to his Hearing Decision, but argues

instead that the omission is harmless error because the ALJ adequately discussed the functional impact of Plaintiff's mental impairments. Under the new rules, the ALJ must rate the degree of functional limitation in three areas (daily activities; social functioning; concentration, persistence, or pace; and episodes of decompensation) as being either none, mild, moderate, marked, or extreme and rate the degree of decompensation as either none, one or two, three, four or more. *See* 20 C.F.R. § 404.1250a(c)(3) & (4). The Hearing Decision does not contain such rating on Plaintiff's functional limitations. As a result, the Hearing Decision fails to comply with either the new regulation or the old regulation. Since this Court has already determined that the matter must be remanded so that the ALJ can set out his specific reasons for rejecting the medical opinions and lay testimony, the Court will not require the ALJ to retroactively complete a PRTF. On remand, however, the ALJ's decision must comply with the new regulation.[7]

## VI. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Remand for additional proceedings and a new final decision consistent with the Court's Order. Accordingly, Plaintiff's Motion for Summary Judgment and Defendant's Motion for Summary Judgment are DENIED.

IT IS SO ORDERED.

7. Plaintiff has assented to the application of the new rules. (Pltf's Reply and Opposition to Defendant's Cross–Motion for Summary Judgment, at 4.)